UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEREK E. GRONQUIST,

    Plaintiff,

    v.

DANIEL WILLIAMS, *et al.*,

    Defendants.

Case No. C06-5543 RBL/KLS

REPORT AND RECOMMENDATION

**Noted For: December 14, 2007**

    Before the Court is Plaintiff's motion for a temporary injunction. (Dkt. # 75). After careful review of the motion, Plaintiff's affidavit and supporting documents (Dkt. # 76), Defendant's response (Dkt. # 78), Plaintiff's Reply (Dkt. # 82), and Plaintiff's supplemental declaration and supporting documents (Dkt. # 84), the undersigned recommends that the motion be denied.

### I.  FACTUAL BACKGROUND AND RELIEF REQUESTED

    Plaintiff is a Washington State prison inmate currently incarcerated at Washington Corrections Center (WCC). (Dkt. # , Exh. 1). On October 3, 2006, Plaintiff filed a Complaint alleging that Defendants violated Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc by imposing a substantial burden on his practice of Taoism. (Dkt. # 3). Plaintiff alleges that he is a Taoist, that he is sincere in his religious beliefs and that he

REPORT AND RECOMMENDATION - 1

requested various items to further the practice of Taoism, including a "healthy vegan diet, to purchase, possess and use property necessary for Taoist practice, Taoist literature, and space to conduct ongoing exercises and meditation." (*Id*., p. 9).

On September 28, 2005, Plaintiff sent a letter to DOC headquarters, in which he identified himself as a Taoist and requested certain medical, religious and dietary accommodations. (Dkt. # 76, p. 6-7; Dkt. # 3, Attach. A). On October 28, 2005, Plaintiff was advised, *inter alia*, that Taoism is not a recognized religious preference of the DOC and that he was receiving a diet that fulfilled the dietary requirements of his declared religion, Buddhism. (Dkt. # 3, Attach. B). Plaintiff then filed a number of grievances, in which he stated that the DOC and the Airway Heights Correction Center (AHCC) were depriving him of his ability to practice his religion. (*Id*., Attach. C-F).

In response, DOC officials stated that Plaintiff was receiving a proper religious diet and instructed Plaintiff to comply with policy requirements and identify an individual in the community who could assist DOC in verifying the religious requirements of his faith practice. (Dkt. # 3, Attach. C-F).

Pursuant to DOC Policy 560.120 *Religious Freedom for Offenders*, effective September 22, 2005:

> If an offender has a mandated religious requirement for his/her denomination or religious faith group that is not currently being provided, s/he is to provide a name and address of an outside religious authority of the faith group to the Chaplain. The Chaplain will send a copy of DOC 21-142 Religious Ceremony or Traditional Rite Information Sheet for them to complete and return to verify the religious requirements of the faith practice.

(Dkt. # 76, Exh. 3, p. 3, Section D).

Plaintiff was directed in April 2006 to use Form 21-142 (Dkt. # 3, Exh. 4, Attach. F) and met with two chaplains of the DOC, who advised him of the use of Form 21-142. (*Id*.). Plaintiff did not complete or return the form to DOC.

REPORT AND RECOMMENDATION - 2

Plaintiff originally alleged in his motion that he was unable to comply with DOC's verification requirement because he has been incarcerated since 1993, has no access to the community or its religious organizations, and he has unsuccessfully attempted to locate Taoist clergy to comply with this request. (Dkt. # 76, p. 8). Plaintiff states that he has now been able to locate a civilian religious authority to verify his Taoist beliefs and practices. (Dkt. # 82, p. 9).[1]

Plaintiff seeks an order requiring Defendants to (1) provide Plaintiff with a natural vegetarian diet with limited grains meeting or exceeding the caloric and nutritional requirements of the DOC dietary policies; (2) permit Plaintiff to fast; (3) permit Plaintiff to purchase herbs, food and nutritional supplements from outside vendors; (4) provide Plaintiff with purified drinking water or permit him to obtain and use water filtration pitchers and filters; (5) permit Plaintiff to obtain and use a negative ion air filtration unit; (6) permit Plaintiff to conduct Taoist practices and observations and obtain and use equipment and supplies necessary for such practices and observances, and (7) provide Plaintiff with a quiet, calm and secure place to conduct religious practices and/or observances. (Dkt. # 75, pp. 1-2).

### III. STANDARD OF REVIEW

"To obtain a preliminary injunction, [Plaintiff] must show either (1) a likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [Plaintiff's] favor." *See Nike, Inc. V. McCarthy*, 379 F.3d 576, 580 (9th Cir. 2004)(quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991)) (internal quotations omitted). "These two alternatives represent extremes of a

---

[1] Plaintiff sought to have this individual appointed as an expert witness in this case. (Dkt. # 85). That motion was denied. (Dkt. # 97).

REPORT AND RECOMMENDATION - 3

single continuum, rather than two separate tests.  Thus, the greater the relative hardship to [Plaintiff], the less probability of success must be shown." *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (internal quotations omitted).

## IV.  DISCUSSION

**A.     Likelihood of Success on the Merits**

Section 3 of RLUIPA provides, in relevant part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government establishes that the burden furthers a compelling governmental interest, and does so by the least restrictive means.

42 U.S.C. § 2000cc-1(a)(1)-(2).  The term "religious exercise" is defined by RLUIPA to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).   Under RLUIPA, Plaintiff bears the initial burden of going forward with evidence to demonstrate a prima facie claim that DOC's verification policy constitutes a substantial burden on the exercise of his religious beliefs. *See* 542 U.S.C. § 2000cc - 2(b). *Warsoldier v. Woodford*, 418 F.2d 898, 995 (9th Cir. 2005).  If Plaintiff establishes the prima facie existence of such a substantial burden, on which he bears the burden of persuasion, the DOC shall bear the burden of persuasion to prove that any substantial burden on Plaintiff's exercise of his religious beliefs is both "in furtherance of of a compelling governmental interest" and the "least restrictive means of furthering that compelling governmental interest." *Id*.; 42 U.S.C. § 2000CC-1(a); § 2000cc-3(g).

A "substantial burden" on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

REPORT AND RECOMMENDATION - 4

At this stage of the proceedings, Plaintiff must show a likelihood of success on the merits of his claim that Defendants have imposed a substantial burden on the practice of his religion in violation of RLUIPA.  Plaintiff argues that Defendants are imposing a substantial burden on the practice of his religion by forcing him to consume food that violates his religious beliefs, refusing to allow him to obtain a proper diet, herbs and nutritional supplements, permission to fast, clean air and water, a quiet, clam and secure worship space and items necessary for his religious practice.  (Dkt. # 76, p. 10).

In response, Defendants claim that Plaintiff is not being denied the ability to practice his religion and that all he need do is comply with DOC's verification requirement (*see, e.g.,* Dkt. # 3, Exh. 3, Attach. F).  Plaintiff objects to DOC's verification requirement for various reasons, including that it never existed prior to his request, it requires Plaintiff to follow a particular religion, it improperly inquires into the veracity of Plaintiff's religious beliefs, and it places burdens on Plaintiff that he cannot meet.  (Dkt. # 75, p. 14).

Now that Plaintiff has identified an expert willing to assist him in verifying his religious practices, his argument that DOC's verification requirement places burdens on him that he cannot meet is moot.  In addition, although Plaintiff alleges that he was previously unable to comply with this requirement, there is no evidence that he attempted to comply at any time since May of 2006 until after the filing of this lawsuit.

Plaintiff also alleges that Defendants amended DOC 560.210D after he requested religious accommodation.  (Dkt. # 76, p. 5-6).  The record reflects, however, that Plaintiff's first documented complaint to DOC officials, was September 28, 2005.  (*Id*., p. 5; Dkt. # 3, Attach. A).  Plaintiff"s first documented grievance was submitted via kite on October 31, 2005.  (Dkt. # 3, Exh. 1, Attach. C).  The current version of DOC 560.210 relied on by Defendants was effective

REPORT AND RECOMMENDATION - 5

September 22, 2005.  (Dkt. # 76, Affidavit, Exh. 3; Exh. 1, ¶ 6).

Plaintiff also alleges that DOC's verification policy unfairly questions the veracity of his faith and results in the preference of one faith over another, however there is no evidence that DOC's policy is being applied in a discriminatory fashion.

Assuming arguendo that the policy requirements of DOC 560.210 constitute a substantial burden, it is likely that Defendants will still be able to satisfy the requirements of 42 U.S.C. § 2000cc-1(a). Prison authorities have an obvious compelling interest in maintaining safety and security inside their facilities. In fact, this is typically the paramount interest of prison officials. RLUIPA must be applied "with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (internal quotations omitted).

Unchecked demands for particular religious accommodations could result in the importation of contraband or the practice of activities detrimental to health and safety. Defendants argue that they will likely be able to demonstrate that requiring the identification of a single outside individual or group to assist with the formulation of religious rite accommodation is the least restrictive means of furthering the government's compelling interest in prison safety and security.

There is no evidence before the Court at this time that Defendants violated the law or abused their own policies. Plaintiff's contention that he cannot be put to the proof of his beliefs that his air, water and food are impure is simply misplaced.  Plaintiff must still show that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs."

Significantly, Plaintiff's complaint that he was unable to satisfy DOC's verification policy

REPORT AND RECOMMENDATION - 6

1  requirements is now moot.   This, coupled with Plaintiff's lack of action for almost two years and
2  lack of other evidence of a substantial burden on the exercise of his religious beliefs, leads to the
3  conclusion that Plaintiff has failed to demonstrate a likelihood of success on the merits.
4  Accordingly, the undersigned recommends that Plaintiff's motion for temporary restraining order
5  may be denied on this basis.

**B.     Irreparable Injury**

A party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.  *Warsoldier*, 418 F.3d at 1001 (internal citations omitted).

Plaintiff alleges various injuries resulting from exposure to improper diet, polluted air and water and disruptive environment that makes it impossible for him to pursue his chosen faith. (Dkt. # 76, p. 10).  The record reflects, however, that Plaintiff has not shown an actual or imminent injury that is not conjectural or hypothetical in nature.   There is no evidence that the OVO Lacto Vegetarian diet provided to Plaintiff is nutritionally inadequate or that it has contributed to the illnesses complained of by Plaintiff.  (*Id*.).  Conversely, documents attached to Plaintiff's complaint indicate that Plaintiff was being treated for his gout and that he refused to take his medications.  (Dkt. # 3, Attach. B).  Plaintiff was also advised that several environmental areas of concern to him, such as the water supply and air ventilation, were inspected at AHCC and found to be without deficiency.  (Dkt. # 3, Attach. B).   In addition, Plaintiff has been "exposed" to these various detrimental and defiling substances since at least 2005 and yet only now seeks relief from imminent harm.

Plaintiff has also not shown that DOC's verification policy constitutes a "substantial burden on the exercise of his religious beliefs."  As Plaintiff has now located an expert willing to

REPORT AND RECOMMENDATION - 7

assist him in verifying his religious practices, he need only comply with DOC's verification policy to accomplish what he seeks here.

As Plaintiff cannot show that irreparable harm, the undersigned recommends that his motion for injunctive relief be denied.

**C.     Public Interest and Balance of Hardships Weigh Against Injunctive Relief**

Plaintiff maintains that by withholding his requests, he is being forced to defile himself and that Defendants should simply fulfill his requests.  (Dkt. # 75, p.16).

On the other hand, it is clear that prison authorities have an obvious compelling interest in maintaining safety and security inside their facilities.  Unchecked demands for particular religious accommodations could result in the importation of contraband or the practice of activities detrimental to health and safety.  DOC's policy requiring the identification of a single outside individual or group to assist with the formulation of religious rite accommodation is not an unreasonable manner in which to facilitate DOC's interest in insuring safety and security inside its facilities.

As Plaintiff failed to show how a preliminary injunction would be in the public interest or how the balance of potential harm favors him and therefore, his requested relief would not be "to preserve the status quo pending a determination on the merits of the case." *Los Angeles Mem'l Coliseum Com'n*, 634 F.2d at 1200.  Accordingly, the undersigned recommends that Plaintiff's request for injunctive relief be denied.

## V.   CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court **DENY** Plaintiff's motion for preliminary injunction (Dkt. # 75)**.**  A proposed order accompanies this Report and Recommendation.

REPORT AND RECOMMENDATION - 8

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 14, 2007**, as noted in the caption.

DATED this 20th day of November, 2007.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9