1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

DEREK E. GRONQUIST,

11

Plaintiff,

12

v.

Case No. C06-5543 RBL/KLS

13

DANIEL WILLIAMS, *et al.*,

REPORT AND RECOMMENDATION

14

Defendants.

**Noted For: March 7, 2008**

15

16

17

    Before the Court is Defendants' motion for summary judgment.  (Dkt. # 92).  In support of

their motion, Defendants submit the Declarations of Shaunna Carter, George H. Lajueness, Dennis

18

Dahne, Terence E. Madden, Ann Lachney, and Randall Gregg (*Id.*, Exhibits 1 through 6, with

19

attachments).[1]  Plainitiff opposes the motion (Dkt. # 102) and submits his declaration with

20

attachments (Dkt. #103).

21

    After careful review of the motion, Plaintiff's response, the parties' summary judgment

22

evidence, the balance of the record, and viewing the evidence in the light most favorable to

23

24

    [1]By Praecipe, Defendants substituted signed Declarations of George Lajueness and Ann
Lachney on October 18, 2007 at Exhibits 2 and 5, for the unsigned Declarations originally
submitted.  (Dkt. # 93)

25

26

REPORT AND RECOMMENDATION - 1

1  Plaintiff, the undersigned recommends that Defendants' motion for summary judgment be granted.

2  ## I.  FACTUAL BACKGROUND

3       Plaintiff is a Washington State prison inmate currently incarcerated at Washington

4  Corrections Center (WCC).  (Dkt. # 92, Exh. 1).  On October 3, 2006, Plaintiff filed a Complaint

5  alleging that Defendants violated the Religious Land Use and Institutionalized Persons Act

6  ("RLUIPA") 42 U.S.C. § 2000cc, by imposing a substantial burden on his practice of Taoism. (Dkt.

7  # 3).  Plaintiff alleges that he is a Taoist, that he is sincere in his religious beliefs and that he

8  requested various items to further his practice of Taoism, including a "healthy vegan diet, to

9  purchase, possess and use property necessary for Taoist practice, Taoist literature, and space to

10 conduct ongoing exercises and meditation."  (*Id.*, p. 9).

11      On October 18, 2005, Plaintiff filed a grievance while at AHCC alleging that DOC was

12 depriving him of his ability to practice his religion. (Dkt. # 92, Exh. 2, Grievance Log ID #

13 0525183). In response, Defendant Lajueness informed Plaintiff that pursuant to DOC Policy

14 560.210, he would have to wait six months from the date he filled out his religious preference form

15 to change his religion. (*Id.*, Exh. 2, Attach. A).  As Taoism is not a religion currently recognized on

16 the DOC Religious Program and Property Matrix, Defendant Lajueness also advised Plaintiff that

17 he would need to complete Form 21-142 "Religious Ceremony or Traditional Rite", (Form 21-142)

18 to be allowed specific property relating to this religion or a specific diet. (*Id.*, Attach. B).

19 According to DOC records, as of December 22, 2005, Plaintiff had not changed his religion from

20 Buddhist to Taoist. (*Id.* at 4).

21      Pursuant to DOC Policy 560.120 *Religious Freedom for Offenders*, effective September 22,

22 2005:

26 REPORT AND RECOMMENDATION - 2

> If an offender has a mandated religious requirement for his/her denomination or religious faith group that is not currently being provided, s/he is to provide a name and address of an outside religious authority of the faith group to the Chaplain.  The Chaplain will send a copy of DOC 21-142 Religious Ceremony or Traditional Rite Information Sheet for them to complete and return to verify the religious requirements of the faith practice.
>
> . . .
>
> When DOC 21-142 Religious Ceremony or Traditional Rite Information Sheet is returned, the Chaplain will forward a copy to the Religious Program Manager, who will develop a religious practice statement for the faith group for distribution to all facility Chaplains.

(*Id*., Exh. 4, Attach. A, pp. 2-3).

Examples of some faith groups that are currently being accommodated by the DOC include Asatru, Buddhism, Buddhism-Nichiren Shoshu, Global Church of God, International Society of Kirshna Consciousness (Iskcon), Moorish Science, Rastafarian and Wicca. (*Id.,* Exh. 4, Attach. A (Attachment to DOC 560.210)).  Any offender wishing to participate in any closed religious program, possess any authorized religious or sacred item, or participate in a mandated religious diet must declare his/her religious preference by using DOC 21-053 Religious Preference and an offender's declared religious preference is subject to the standards of the denomination and/or religious group identified on the form.  *Id*., p. 2.  *See also* DOC Religious Property Matrixes, setting guidelines for offenders, property officers and staff, setting out the personal consumable property and personal and group property that each faith group recognized by the DOC is authorized to possess.  (*Id.,* Exh. 4, Attach. A (Attachment to DOC 560.210)).

Defendant Lajueness provided Plaintiff with Form 21-142 on November 11, 2005. (*Id*., Exh. 2, ¶ 6).  Defendant Lajueness also requested Plaintiff to supply him with the name and address of his religious leader pursuant to DOC Policy 560.210, so that he could then send the person identified by Plaintiff Form 21-142 to complete. *Id*. ¶ 6. As of December 22, 2005, Defendant Lajueness had not received the necessary information from Plaintiff to send out Form 21-142.

REPORT AND RECOMMENDATION - 3

Plaintiff was transferred to the Stafford Creek Corrections Center (SCCC) on January 19, 2006. (*Id*., Exh 1, Attach. A).   On February 11, 2006, Plaintiff submitted a new Religious Preference Form indicating Taoism as his chosen religion; however, he did not complete Form 21-142 to verify the religious requirements of the faith practices of Taoism.  (*Id*., Exh. 3, Attach. A).

On or about March 13, 2006, Plaintiff filed a grievance (log ID # 0605612) requesting the following items: incense; device in which to light incense; a rawhide mallet, ratton, or steel flog; a water filtration system; a bag of rocks; a negative ion generator; and several other items. (*Id*., Exh. 3, Attach. A, Grievance Log ID # 0605612). This grievance was investigated by Defendant Dennis Dahne, Grievance Coordinator at the SCCC. The investigation concluded that many of the items being requested by Plaintiff would be a risk to the safety and security of the institution. (*Id*., Exh. 3).  Additionally, Plaintiff was housed in the Intensive Management Unit (IMU) in March of 2006 and as this is a maximum security environment, it was concluded that the items being requested posed an even greater risk. (*Id*., Exh. 3  ¶ 4).   Plaintiff was advised that many of the items he requested, religious or otherwise, would not be allowed for security reasons due to his maximum security status.  (*Id*., Exh. 3, Attach. A).

In this same grievance, Plaintiff complained of having to eat food items made to imitate meat items. (*Id*.).  Plaintiff claimed that he was Taoist. According to the information gathered by Defendant Dahne regarding this religion, some Taoists subscribe to an Ovo-Lacto diet and others to a Vegan diet. Defendant Dahne was unable to find any information regarding food items made to imitate meat items. *Id*.  Defendant Dahne's investigation revealed that SCCC does not attempt to make non-meat items appear to be meat, but the same general shape will often be used to maintain similar portions. *Id*. Plaintiff was also informed by Defendant Dahne that the Religious Preference Form he currently had on file listed his religion as Buddhist, not Taoism.  *Id*.

REPORT AND RECOMMENDATION - 4

Defendant Dahne also informed Plaintiff that because there was no matrix established specifically for Taoism, the Buddhist matrix was presently being used and that Plaintiff should complete Form 21-142. *Id*.

While at SCCC, Plaintiff met with the former Chaplain, Defendant Terence Madden, a number of times between April 2006 and May 2006. Chaplain Madden informed Plaintiff in order for DOC to accommodate his religious activities and property requests in regards to Taoism, he needed to identify an outside religious authority for Taoism who could complete Form 21-142. (*Id*., Exh. 4,¶ 7). The form would be sent to a recognized Taoist leader to complete their parts of the form itemizing the required religious property and practices, and then sent in to the Religious Program Manager, Dan Williams for approval. (*Id*., Attach. A, DOC Policy 260.510, Religious Freedom for Offenders, effective 09/22/2005).  Plaintiff refused to identify such an individual on the form or verbally. *Id*.

On April 18, 2006, while at SCCC, Defendant Ann Lachney also met with Plaintiff.  (*Id*., Exh. 5,  Exhibit 5, ¶ 5. Plaintiff informed Defendant Lachney that he was on the Vegan diet for religious reasons.  Plaintiff complained that he had lost weight because the Vegan diet he was receiving contained meat. He further complained that his tray was "targeted." *Id*. Because of this, he refused to eat many foods on his tray. Plaintiff also refused to eat soy products on his Vegan tray because he claimed a doctor in the past told him not to. *Id*. According to Plaintiff, he went back to the mainline diet due to the reasons listed above. On mainline, he claimed to have regained the weight lost and was eating about 80 percent of the food on his tray. *Id*. ¶ 6. Defendant Lachney informed Plaintiff that by excluding the soy products from his Vegan meal, he was greatly reducing the nutritional content of his meals and therefore the meal would not be nutritionally adequate. *Id*., ¶ 7.

On July 13, 2006, in a Level II response to Plaintiff's grievance that he was being prohibited from practicing his religion, he was again advised that Chaplains Brill and Madden provided him with Form 21-142 and that Plaintiff needed to send the form to a recognized Taoist leader for completion.  (Dkt. 103, Exh. 17).  Plaintiff was further advised that when Defendant Madden last met with him on Friday, May 26, 2006, Plaintiff told Defendant Madden that he did not wish to discuss this any further with Defendant Madden or Chaplain Brill.  *Id.*

On August 2, 2006, in a Level III response to Plaintiff's grievance, Plaintiff was again advised to follow the proper procedure outlined by DOC Policy 560.210, so that prison authorities could determine how to provide for his religious practice.  *Id.*

Plaintiff was later transferred to the Clallam Bay Corrections Center (CBCC) on June 28, 2006.  Plaintiff remained at CBCC from June 28, 2006 until August 22, 2007.  (*Id.*, Exh. 6, ¶ 3).  While at CBCC, Defendant Gregg provided Plaintiff with the Vegan diet in accordance with the religious preference form on file that was signed by Plaintiff.  (*Id.*, ¶ 4).

Plaintiff alleges that because Taoism is not currently identified as an established religion by the DOC is it "therefore prohibited," and that he has been threatened with, and disciplined for attempting to engage in Taoist activities.  (Dkt. # 102, p. 2).  Plaintiff declares that he has been threatened with disciplinary action for attempting to practice martial arts, for attempting to fast, and because he has no quiet, calm and secure spaces within which to mediate.  (Dkt. # 103, p. 2).  Plaintiff also declares that he is being denied access to special herbs, supplements, special food items and clean air and water necessary to his faith.  *Id.*  Plaintiff was also denied possession of "Qigong, The Secret of Youth," and two Taoist books, which he claims he should have been allowed under SMU's policy allowing personal religious books in SMU.  *Id.*, p. 6.

Plaintiff declares that he does not have any "outside religious authority" to "verify" his faith

practice and believes the justification is unreasonable. *Id*., p. 5. He also testifies that he informed Defendant Lajueness that the Taoist Church had been violently suppressed by the Chinese Communist government and was virtually non-existent, Taoists are generally reclusive and non-responsive to the demands of government, and if he could find such a person it would be offensive to ask them to provide information. *Id*. Defendant Lajueness advised Plaintiff that he found several Taoist Temples on the internet and sent e-mails to two separate organizations. *Id*. To Plaintiff's knowledge, Defendant Lajueness received no responses to those e-mails. *Id*. [2]

At this same time, Plaintiff testifies that Defendant Curran, the Associate Superintendent of AHCC told him not to worry about the "verification" requirement advanced by Defendant Lajueness and that Defendant Curran would see what he could do to accommodate Plaintiff's religious practices. (Dkt. # 103, p. 4). While at SCC, Plaintiff claims that Defendant Madden also instructed him to complete Form 21-142 and advised Plaintiff that it was not necessary to have an outside religious authority to verify his practices. (Dkt. # 103, p. 8). Plaintiff testifies that Defendant Madden advised him that Plaintiff's expression and citation to a publication would suffice. *Id*. Plaintiff testifies further that he completed Form 21-142 and submitted it to Mr. Madden. *Id*. Plaintiff attaches as Exhibit 22, a "draft" copy of Form 21-142 and states that "the pages behind this document are a copy of the actual text of the Religious Ceremony Request form that [he] submitted to Mr. Madden." *Id*.

Plaintiff also declares that he has been denied a diet in accordance with his faith, *i.e.*, one that includes animal products and/or replications of animal products made from grains and

---

[2]The Court notes that since the filing of this lawsuit, Plaintiff has found an individual, Livia Kohn, a professor of Boston University, who is willing to act as an expert on matters of Daoist history, practices and diet. (Dkt. # 85, Exh. A). Ms. Kohn also provided Plaintiff with the name, mailing and e-mail address of an individual who runs a Daoism Center in California. *Id*. The terms Daoism and Taoism are used interchangeably within this reference. *Id*., p. 2.

REPORT AND RECOMMENDATION - 7

1   chemicals.  *Id.*, p. 7.  In addition, Plaintiff complains that his food portions are too small and the

2   vegetarian diets are nutritionally deficient.  *Id.*, pp. 7-8.  In support, Plaintiff refers to his

3   supplemental declaration provided in support of his preliminary injunction filed earlier in this

4   action.  (Dkt. # 84).

### III. STANDARD OF REVIEW

In examining Defendants' motion, the Court must draw all inferences from the admissible

evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d

1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The

moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the opposing party must show that there is a

genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574,

586-87 (1986).  The opposing party must present significant and probative evidence to support its

claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.

1991).  "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence

supporting that belief, is no more than speculation or unfounded accusation about whether the

defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*,

237 F.3d 1026, 1028 (9th Cir. 2001).

### IV.  DISCUSSION

**A.       Stating a Claim Under RLUIPA**

REPORT AND RECOMMENDATION - 8

RLUIPA provides in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *Greene v. Solano County Jail,* – F.3d -- , 2008 WL 170318 (9th Cir. 2008); *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).

On the other hand, the Supreme Court has not read RLUIPA as elevating the "accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). Any accommodation "must be measured so that it does not override other significant interests." *Id.* Courts should apply RLUIPA with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 723 (quoting Joint Statement S7775 (quoting S.Rep. No. 103-111, p. 10 (1993), U.S.Code Cogn. & Admin.News 1993, pp. 1892, 1899, 1900)).

Indeed, "prison security is a compelling state interest," and "deference is due to institutional officials' expertise in this area." *Id.* at 725 n.13. Therefore, should an inmate's request for religious accommodation "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Id.* at 726.

Under RLUIPA, the inmate "bears the initial burden of going forward with evidence to

REPORT AND RECOMMENDATION - 9

demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Warsoldier*, 418 F.3d at 994.  To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus upon such exercise." *Id.* at 995.  If the inmate is able to meet this burden, the state then must prove that "any substantial burden" on the "exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000cc-1(a), citing 42 U.S.C. § 2000cc-2(b)) (emphasis in original).  Further, RLUIPA "is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Id.*

There is no dispute that Taoism is a religion practiced in this country.  *See, e.g.*, *Alvarado v. City of San Jose*, 94 F.3d 1223, 1228 n. 2 (9th Cir. 1996).  At issue in this case is whether Defendants' policy requiring the identification of an outside authority of the faith group to verify the religious requirements of the faith practices of Taoism imposes a substantial burden on Plaintiff's ability to exercise his religion.

Plaintiff argues that Defendants' policy prohibits him from practicing the tenets of his faith in its entirety as he is prohibited from a diet of his choosing, the right to purchase, possess and use certain property, and the space and quiet to conduct exercises and meditation.  Plaintiff argues that by forcing him to verify the existence of his religion, DOC has completely deprived him of his ability to practice his religion and forced him to become a Buddhist.  Defendants argue that the policy is at most, an inconvenience to Plaintiff and that Plaintiff need only look to his own intransigence in refusing to assist DOC in accommodating his religious needs as the only impediment to his receipt of that accommodation.

**1.   Plaintiff's Claims Under RLUIPA**

1    Plaintiff claims that he was not provided with a nutritionally adequate vegetarian diet and

2    that the diet he was receiving was contrary to the dictates of the practice of his religion.   Certainly,

3    inmates have the right to be provided with food sufficient to sustain them in good health that

4    satisfies the dietary laws of their religion.  *See, e.g., McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.

5    1987).  In this case, the evidence reflects that Plaintiff was provided an OVO lacto vegetarian diet

6    and/or Vegan vegetarian diets, both of which fulfill the dietary requirements for the Buddhist

7    religion, and were provided in accordance with the religious preference form on file signed by

8    Plaintiff.  (Dkt. # 3, Exh. 4; Dkt. 92; Exh. 6).   The Buddhist diet was also chosen to allow Plaintiff

9    to have a special diet because there was no information regarding Taoist dietary requirements.

10   (Dkt. # 103, Exh. 18).

11

12    Although the facts must be viewed in the light most favorable to Plaintiff, there is no

13   evidence to support Plaintiff's claim that "no diet that I was provided was vegetarian."  (*See* Dkt.

14   #103, p. 8).  The record reflects that Plaintiff chose to limit his intake while he was on the Vegan

15   vegetarian diet because he believed that he was receiving meat items and he chose not to eat soy.

16   (Dkt. # 92, Exh. 5, p. 1).  The record also reflects that Defendants Johnson and Enfeld were

17   troubled by Plaintiff's decision to voluntarily limit his intake in this manner as such a diet was not

18   indicated for Plaintiff's gout condition. (Dkt. # 103, Exh. 26).  In further support of his claim that

19   the food served to him is not nutritionally adequate and inconsistent with the tenets of his faith,

20   Plaintiff offers his independent analysis of DOC's various menus.  (Dkt. # 87, p. 7).  However,

21   Plaintiff's subjective analysis and summary conclusions are not competent summary judgment

22   evidence.

23    Plaintiff also alleges that because Taoism is not currently identified as an established

24   religion by the DOC it is "therefore prohibited."  However, the record reflects that DOC officials

25

26   REPORT AND RECOMMENDATION - 11

discussed with Plaintiff on multiple occasions, what he needed to do to assist the Department in accommodating his religious practices under DOC Policy.  (Dkt. # 92, Exhs. 2, 3 and 4).  Plaintiff was instructed to identify one outside religious authority who could complete Form 21-142, for submission to the Religious Program Manager in accordance with DOC 560.210(I)(D).  *Id.*  DOC could then make accommodations for necessary property and rite practices, including Plaintiff's concerns regarding his dietary requirements and reading materials, all with due regard to institutional security and functioning. *Id.*   A review of the property matrixes of the various religions reflects that accommodations for such items as incense, rocks and books are made for a variety of faith groups within the DOC.  (*Id.*, Exh. 4, DOC. 560.210, Attach.)

In response, Plaintiff claims that he cannot identify an outside source because of the reclusive nature of Taoists and that it would be offensive to request information of them.  (Dkt. #103, p. 5).   However, since the filing of this lawsuit, Plaintiff has notified the Court of at least two individuals as sources of information on matters of Taoist history, practices and diet.  (Dkt. # 85, Exh. A).

The undersigned concludes that contacting an outside religious authority to complete Form 21-142, for submission to the Religious Program Manager in accordance with DOC 560.210(I)(D) does not constitute a substantial burden on the exercise of Plaintiff's religion.

Plaintiff testified that Defendant Madden informed him that it was not necessary to have an outside religious authority to verify his practices and that Plaintiff submitted Form 21-142 to Mr. Madden as instructed but received no response.  (Dkt. # 103, p. 8).   Plaintiff also testified that Defendant Curran, the Associate Superintendent of AHCC, told him not to worry about the "verification" requirement advanced by Defendant Lajueness and that Defendant Curran would see what he could do to accommodate Plaintiff's religious practices.  (*Id.*, p. 4).

REPORT AND RECOMMENDATION - 12

However, when Plaintiff grieved this issue and specifically mentioned in his grievance that Mr. Curran "instructed [him] not to address the manner further with the Chaplain or [not] to worry about the 'form,'" he was advised as follows:

> You are not being denied the opportunity to practice your religion.  You are being asked to follow the proper procedure so your religious practice can be provided for.  The process for you to be able to practice your religion has been outlined for you.  If you follow the procedures outlined in the Religious Freedom for Offenders Policy, DOC 560.210, we will be able to determine how we can provide for your religious practice.

(Dkt. # 103, Exh. 8, p. 3).

And, as late as May 26, 2006, Defendant Madden testified that Plaintiff had informed him that he had not sent out the form and had no intention of doing so.  (Dkt. 92, Exh. 4, p. 2).  In addition, on July 13, 2006, in a Level II response to Plaintiff's grievance that he was being prohibited from practicing his religion, he was again advised that Chaplains Brill and Madden provided him with Form 21-142 and that Plaintiff needed to send the form to a recognized Taoist leader for completion.  (Dkt. 103, Exh. 17).  Plaintiff was further advised that when Defendant Madden last met with him on Friday, May 26, 2006, Plaintiff told Defendant Madden that he did not wish to discuss this any further with Defendant Madden or Chaplain Brill.  *Id.*   On August 2, 2006, in a Level III response to Plaintiff's grievance, Plaintiff was again advised to follow the proper procedure outlined by DOC Policy 560.210, so that prison authorities could determine how to provide for his religious practice.  *Id*.

Therefore, viewing all of the evidence in the light most favorable to Plaintiff, the undersigned concludes that although Plaintiff appears to be claiming that Defendants somehow waived the requirement of DOC Policy 560.210, the uncontroverted evidence is to the contrary.  The evidence reflects that Plaintiff was regularly and consistently instructed to follow the proper procedure to send Form 21-142 to a recognized Taoist leader to have that leader complete the form

REPORT AND RECOMMENDATION - 13

itemizing the required religious property which Plaintiff needed in order to engage in his religious practices.  As noted above, this is not an undue burden on the exercise of Plaintiff's religion.

Even if the Court assumes that Plaintiff has borne his initial burden of demonstrating that DOC's policy unduly burdens the exercise of his religion, the undersigned finds that the policy is the least restrictive means of furthering the institution's compelling interest of maintaining prison security.  The evidence reflects that Plaintiff is a maximum security prisoner housed in a maximum security unit and he was advised that some of the accommodations he requested raised security concerns.  (Dkt. # 92, Exh. 3, ¶ 7).

Because unchecked demands for religious accommodations could result in the import of contraband or the practice of activities detrimental to the health and safety of inmates and employees, DOC's policy of an outside source to verify the religious property and belief requirements for a denomination or religious faith group that is not currently being provided is not an unreasonable manner in which to facilitate DOC's interest in insuring safety and security inside its facilities.

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment on Plaintiff's RLUIPA claims be granted.

**2.      Personal Participation of Defendants and Qualified Immunity**

Defendants argue that Plaintiff's allegations against Defendants Clarke, Cedeno, Johnson, Miller-Stout, Curran, Waddington, Roberts, May, Butler, Dyson and Brunson are based solely on their supervisory positions and that none of these Defendants may be held liable based on a theory of *respondent superior*.[3]  Defendants argue that absent allegations of personal participation, all of

_____

[3]Plaintiff concedes that Defendant Brunson is not a proper party to this lawsuit as she did not participate in any alleged deprivation and Plaintiff included her only for purposes of injunctive relief when he was housed at CBCC.  (Dkt. 102, p. 14).

REPORT AND RECOMMENDATION - 14

1  these Defendants should be dismissed. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *Polk*

2  *County v. Dodson*, 454 U.S. 312, 325 (1981).  Defendants also argue that they are in any event,

3  entitled to qualified immunity.

4      As the undersigned has concluded that Plaintiff has failed to demonstrate a violation of his

5  constitutional rights, these issues need not be reached.  *See e.q., Conn v. Gabbert*, 526 U.S. 286,

6  290 (1999).

7          **3.      Supplemental State Claims**

8      In addition to his federal claim under RIULPA, Plaintiff alleges that Defendants' conduct

9  constituted negligence and a violation of RCW  72.01.220.  (Dkt. # 3, p. 12).  Defendants ask this

10  Court to decline jurisdiction over the pendent state claims.  A court may decline to exercise

11  supplemental jurisdiction over related state-law claims once it has "dismissed all claims over which

12  it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also San Pedro Hotel Co., Inc. v. City of*

13  *Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998) (district court not required to provide explanation

14  when declining jurisdiction under § 1367(c)(3)).

15      As the undersigned has recommended the Court grant Defendants' summary judgment on

16  Plaintiff's federal RLUIPA claim, it also recommends that the Court grant Defendants' motion for

17  summary judgment on Plaintiff's supplemental state tort claim for negligence.

18              **V.   CONCLUSION**

19      For the foregoing reasons, the undersigned recommends that the Court **GRANT** Defendants'

20  motion for summary judgment (Dkt. # 92).  A proposed order accompanies this Report and

21  Recommendation.

22      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

REPORT AND RECOMMENDATION - 15

1  the parties shall have ten (10) days from service of this Report to file written objections.  *See also*

2  Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes

3  of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

4  72(b), the clerk is directed to set the matter for consideration on **March 7, 2008**, as noted in the

5  caption.

6
        DATED this 14th day of February, 2008.

7

8

9                                                    Karen L. Strombom

10                                                   United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  REPORT AND RECOMMENDATION - 16